**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER R.,[1]<br>Plaintiff, | Case No. 2:25-cv-804<br>Litkovitz, M.J. |
| vs. | |
| COMMISSIONER OF<br>SOCIAL SECURITY,<br>Defendant. | **ORDER** |

Plaintiff Christopher R. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 8) and the Commissioner's response (Doc. 11). Plaintiff did not file a reply.

## I. Procedural Background

Plaintiff protectively filed his applications for DIB and SSI on January 16, 2023, alleging disability since June 23, 2022, due to compartment syndrome, edema, lower back injury, DVT, pulmonary embolism, grade 4 lacerated liver, gallbladder removal, acute kidney failure, and mental issues. (Tr. 261-67; *see also* Tr. 284). The applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Jeannine Lesperance. Plaintiff and a vocational expert (VE) appeared via video and testified at the ALJ hearing on April 29, 2024. (Tr. 90-124). On June 24, 2024, the ALJ issued a partially favorable decision regarding plaintiff's applications. (Tr. 8-32).

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

On May 16, 2025, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-7). This matter is properly before this Court for review.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2027.

2. [Plaintiff] has not engaged in substantial gainful activity since June 23, 2022, the date [plaintiff] became disabled (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. From June 23, 2022 through August 22, 2023, the period during which [plaintiff] was under a disability, [plaintiff] had the following severe impairments: sequelae of liver laceration with abdominal fluid collection; obesity; peripheral neuropathy; chronic deep vein thrombosis (DVT) (status post IVC filter placement and on Eliquis); and right foot drop (20 CFR 404.1520(c) and 416.920(c)).

4. From June 23, 2022 through August 22, 2023, [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] find[[s] that, from June 23, 2022 through August 22, 2023, [plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he could lift, carry, push, or pull 10 pounds occasionally and

5 pounds frequently. He could stand and/or walk for 2 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. He could occasionally climb ramps and stairs; stoop; crouch; and push, pull, or operate foot controls with his bilateral lower extremities. He could never climb ladders, ropes, or scaffolds or crawl. [Plaintiff] could not work at unprotected heights. [Plaintiff] required a cane for ambulation and balance.

6. From June 23, 2022 through August 22, 2023, [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

7. [Plaintiff] was a younger individual age 45-49, on the established disability onset date (20 CFR 404.1563 and 416.963).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564 and 416.964).

9. [Plaintiff]'s acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568 and 416.968).

10. From June 23, 2022 through August 22, 2023, considering [plaintiff]'s age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that [plaintiff] could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

11. [Plaintiff] was under a disability, as defined by the Social Security Act, from June 23, 2022 through August 22, 2023 (20 CFR 404.1520(g) and 416.920(g)).

12. [Plaintiff] has not developed any new impairment or impairments since August 23, 2023, the date [plaintiff]'s disability ended. Thus, [plaintiff]'s current severe impairments are the same as those present from June 23, 2022 through August 22, 2023.

13. Beginning August 23, 2023, [plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2) and 416.994(b)(5)(i)).

14. Medical improvement occurred as of August 23, 2023, the date [plaintiff]'s disability ended (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).

[2] Plaintiff's past relevant work was as a carpenter, a medium exertion, but performed at a very heavy level, skilled position. (Tr. 22, 115).

15. The medical improvement that has occurred is related to the ability to work because there has been an increase in [plaintiff]'s residual functional capacity (20 CFR 404.1594(b)(4)(i) and 416.994(b)(1)(iv)(A)).

16. After careful consideration of the entire record, [the ALJ] find[s] that, beginning August 23, 2023, [plaintiff] has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b); [plaintiff] can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for 4 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. He can occasionally climb ramps and stairs, as well as occasionally stoop, crouch, push/pull/operate foot controls with the bilateral lower extremities. [Plaintiff] can never climb ladders, ropes, scaffolds, or crawl. He cannot work at unprotected heights and must use a cane to ambulate over 75 feet.

17. [Plaintiff] is unable to perform past relevant work (20 CFR 404.1565 and 416.965).

18. Since August 23, 2023, [plaintiff] remains a younger individual (20 CFR 404.1563 and 416.963).

19. [Plaintiff]'s education level has not changed (20 CFR 404.1564 and 416.964).

20. Beginning August 23, 2023, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

21. Beginning August 23, 2023, considering [plaintiff]'s age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).[3]

22. [Plaintiff]'s disability ended August 23, 2023, and [plaintiff] has not become disabled again since that date (20CFR 404.1594(f)(8)).

(Tr. 16-27) (footnotes added).

---

[3] The ALJ relied on the VE's testimony to find that beginning August 23, 2023, plaintiff would be able to perform the requirements of representative light, unskilled occupations such as a mail clerk (5,500 jobs nationally), a merchandise marker (68,500 jobs nationally), and a cashier II (232,000 jobs nationally). (Tr. 26-27, 117).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B*., 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Napier v. Comm'r of Soc. Sec*., 127 F.4th 1000, 1004 (6th Cir. 2025) ("Even when an ALJ's decision is supported by substantial evidence, we will reverse the decision if we find that the ALJ failed to follow the applicable procedural regulations.") (citing *Miller v. Comm'r of Soc. Sec*., 811 F.3d 825, 833 (6th Cir. 2016)).

### D. Specific Errors

Plaintiff argues that the ALJ's finding that he experienced medical improvement is not supported by substantial evidence. Specifically, he contends that the ALJ did not identify any objective evidence of decreased medical severity as required by the relevant regulations. (Doc. 8 at 4-10). The Commissioner responds that substantial evidence supports the ALJ's conclusion that, as of August 23, 2023, plaintiff experienced medical improvement and could perform a reduced range of light work. (Doc. 11 at 4-10).

**E. Analysis**

Disability benefits may be awarded for a closed period. *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). If an ALJ has found a claimant disabled for a closed period, the ALJ must find a medical improvement in the claimant's condition to end his benefits. *Niemasz v. Barnhart*, 155 F. App'x 836, 839-40 (6th Cir. 2005). *See also Brown v. Comm'r of Soc. Sec.*, No. 1:13-cv-851, 2015 WL 502143, at *5 (S.D. Ohio Feb. 5, 2015) ("In order to find a closed period of disability, the Secretary must find that at some point in the past, the claimant was disabled and that, at some later point in the past, he improved to the point of no longer being disabled") (quoting *Long v. Sec'y of HHS*, No. 93-2321, 1994 WL 718540, at *2 (6th Cir. Dec. 27, 1994)).

To satisfy the medical improvement standard, there must be "substantial evidence" of "medical improvement" and proof that the claimant is "now able to engage in substantial gainful activity." *Niemasz,* 155 F. App'x at 840 (citing 42 U.S.C. § 423(f)(1)). The regulations define "medical improvement" as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled. . . . A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs and/or laboratory findings associated with your

impairment(s)." 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i). The burden of proof to establish that a claimant has experienced a medical improvement which renders him capable of performing substantial gainful activity lies with the Commissioner. *See Kennedy v. Astrue,* 247 F. App'x 761, 765 (6th Cir. 2007). *See also Maudlin v. Comm'r of Soc. Sec.*, No. 1:14-cv-256, 2015 WL 13738802, at *3 (S.D. Ohio July 15, 2015), *report and recommendation adopted sub nom*, *Maudlin v. Astrue*, 2015 WL 5212049 (S.D. Ohio Sept. 8, 2015) ("Because the ALJ first determined that she was disabled beginning on her alleged disability onset date, it is the Commissioner who bears the burden of proof to establish that the Plaintiff's impairment has medically improved.").

On June 23, 2022, plaintiff suffered catastrophic injuries from being dragged 60 feet underneath a car on which he had been working. (Tr. 7516). He sustained a left ear injury, liver laceration, kidney damage, and very serious injuries to both legs, worse to his right leg than his left. (*Id.*). His recovery was complicated by deep vein thrombosis and pulmonary embolism, which required placement of an IVC filter and anticoagulation therapy. (*Id.*). He underwent multiple surgeries in addition to the IVC filter placement, including bilateral fasciotomies of his right lower extremity, gallbladder removal, and biliary stent placement. (*Id.*).

The ALJ found plaintiff disabled from June 23, 2022 through August 22, 2023. (Tr. 23). No one contests that finding.

The ALJ further found that, as of August 23, 2023, medical improvement had occurred such that plaintiff had the residual functional capacity (RFC) to perform a reduced range of light work, except that he can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk for four hours per eight-hour workday; sit for six hours per eight-hour workday; occasionally climb ramps and stairs; occasionally stoop, crouch, and

push/pull/operate foot controls with his bilateral lower extremities; never climb ladders, ropes, or scaffolds; never crawl; never work at unprotected heights; and must us a cane to ambulate over 75 feet. (Tr. 23-24). Plaintiff contends that the Commissioner failed to establish medical improvement. (Doc. 8 at PageID 7879-7884).

Approximately fourteen months after his accident—on August 22, 2023—plaintiff was discharged from physical therapy. (Tr. 20). The ALJ "put the most emphasis on the physical therapy discharge form because [the physical therapists] monitored his strength over a long period of time to evaluate his goals." (Tr. 24). As the ALJ noted, plaintiff's physical therapy discharge records noted "all strength was 4+/5 or 5/5 except for right ankle dorsiflexion which remained stable at 3/5 . . . able to walk without the cane but had an antalgic gait favoring the right lower extremity . . . met all his goals including his goal to be able to return to light work but 'not without fatigue.'" (Tr. 20, citing Tr. 7518, 7520).[4]

Plaintiff accurately explains that the same discharge note also referenced continued difficulties with right drop foot; "severe pain in (R) upper abdomen since gallbladder surgery a few weeks ago"; coccyx pain that increases when transitioning from sitting to standing and back; shooting pain down his right lower extremity; nerve pain in his peroneal region; issues with his balance, especially when his vision is blocked; and a lack of stamina rendering him unable to walk distances. (Doc. 8 at PageID 7882, citing Tr. 7516-17). The physical therapist's final assessment states:

> Patient has made significant progress since start of PT and has even been able to perform light duty work around the house with only minimal modifications. He has adequate strength at this time and has met majority of his goals. Patient feels

[4] The ALJ cited exhibits 19F-37 and 19F-29. (Tr. 20). The first citation appears to be a typographical error, as the information cited appears at exhibit 19F-27 (Tr. 7518) rather than exhibit 19F-37 (Tr. 7528), which is merely a fax cover sheet.

> that he is doing better and feels that he should continue to see improvement with HEP [home exercise plan].

(Tr. 7519).

As the ALJ discussed, plaintiff saw his primary care physician on September 1, 2023. (Tr. 21, Tr. 7683-94). During that visit, his physician noted that plaintiff's "chronic, intermittent" epigastric pain was "not at goal" but "improving." (Tr. 7683). He required pain medicine "more rarely now" and planned "to wean off completely in 1 year." (*Id.*). His lower abdominal and right upper quadrant pain were similarly described as "chronic, intermittent, currently stable" or "improving" with "episodes gradually becoming less intense and frequent." (Tr. 7683-84). Plaintiff's neuropathy was "chronic, not at goal, though much improved from several months ago." (Tr. 7684). His physician further noted that his lower limb strength had made "significant improvements" even though it was "not quite at baseline"; his unintentional weight loss had improved to the point where he felt "well"; and his liver function tests "improved back to normal limits" by July 2023. (*Id.*). On physical examination, he exhibited mild abdominal pain on palpation without rebound or guarding, and his surgical scars had healed well. (Tr. 7687). He continued to exhibit decreased sensation in his right lower extremity with a slowed gait, trace to 1+ edema, limited strength and range of motion with "significantly improved" plantarflexion, and dorsiflexion "close to normal limits." (*Id.*). She noted that he could move from the chair to the examination table without a cane but continued to use the cane for longer periods of ambulation. (*Id.*).

As the ALJ discussed, plaintiff saw The Ohio State University Neurology Clinic for right lower extremity pain on November 30, 2023. (Tr. 21, Tr. 7817-24). He was able to ambulate with his cane and reported "no significant changes in his mobility" since July 2023 with two

"near falls" in the last few months. (Tr. 7817-18). His physical and mental status examinations were normal except for right lower extremity weakness with foot drop, neuropathy, and hemiplegic gait. (Tr. 7821-23).

On January 4, 2024, plaintiff again saw his primary care provider. (Tr. 7695-7703). At that time, he was experiencing a sinus infection with congestion, decreased mood due to financial concerns related to disability, mild abdominal pain without rebound or guarding, and continued neuropathy in his lower extremity with a cautious gait. (Tr. 7697-98). He noted that he had been out of his medication for several days, and anticipated that his abdominal pain would improve once he resumed taking his medication. (Tr. 7702). By March 1, 2024, plaintiff reported that his abdominal pain was "much improved," that he "very rarely" used his prescribed narcotic for pain relief, and that he canceled his follow up appointment with the pancreas specialist "given improvement as well as some insurance barriers." (Tr. 7704). The issues with his lower extremities presented as either "stable" (neuropathy) or "improving" (swelling, myalgias, and arthralgias). (Tr. 7706).

On March 12, 2024, plaintiff treated at The Ohio State University Comprehensive Spine Center for low back/coccyx pain. (Tr. 21, Tr. 7790-94). At that time, plaintiff continued to ambulate with the assistance of a cane and had some tenderness to palpation, but he had full 5 of 5 strength in all muscle groups with normal gait, and the doctor described his examination as "reassuring." (Tr. 7793-94).

It appears from a review of plaintiff's medical records that he has exhibited consistent stability or improvement in his medical condition since August 2023. Plaintiff generally contends that "subsequent records from September 2023 through March 2024 confirm ongoing neuropathy, leg swelling, dizziness, abdominal pain, and chronic right foot weakness." (Doc. 8

at PageID 7883, citing Tr. 7685-7706, 7730). There is no question that plaintiff suffered extremely severe injuries from the June 2022 motor vehicle incident, and he continues to suffer from chronic conditions as a result. However, the ALJ discussed the records to which plaintiff cites and reasonably concluded that plaintiff—following a 14-month closed period of disability beginning the day of the injuries—has the residual functional capacity to perform light work with additional limitations. (Tr. 20-21, 23-24). Having examined those same medical records, the Court concludes that the ALJ's determination is supported by substantial evidence.

Plaintiff also contends the ALJ "erred in mischaracterizing [plaintiff's] activities of daily living" because plaintiff denied telling his physical therapist that he was able to perform "light work activities" or that his activities of daily living were "fully restored." (Doc. 8 at PageID 7884). The Court, for purposes of this appeal, credited plaintiff's denial of such statements. Indeed, even the ALJ acknowledged plaintiff's denial of those statements, finding:

> Regarding effectiveness of treatment, as noted, the record shows significant improvement in all his injuries, but with a residual foot drop and some abdominal pain from the small remaining fluid collection. Regarding precipitating and aggravating factors, at the hearing, he testified that he could walk the length of a football field with the cane, 75 feet without it, and did some light household chores, albeit with some difficulty with things like vacuuming. Regarding activities of daily living, in August 2023, the claimant reported doing some "work activities," working on a few home projects but needing extra time and with some aggravation of pain. He also worked on a cellar door, and he further reported he had been able to perform light work activities "without significant difficulty" and that "light duty work and activities of daily living (ADLs) are fully restored." (Ex. 19F-10, 27, 31). At the hearing, the claimant denied saying that but acknowledged the ability to perform some household tasks with breaks as well as returning to part time work activity in January 2024, working for a friend in his cabinet shop, sanding and finishing some cabinets. Considering all the factors, I find that after the closed period the evidence is not sufficiently consistent with the claimant's subjectively reported symptoms to warrant a more limited residual functional capacity. However, during the closed period his reported symptoms were sufficiently consistent to support a finding of "disabled."

(Tr. 24).

The Court agrees with plaintiff that a finding of medical improvement requires a longitudinal examination of medical records that support permanent rather than temporary symptom improvement. (Doc. 8 at PageID 7884) (citing *Niemasz*, 155 F. App'x at 840) ("When there is a respite in a claimant's impairment, it is true, the ALJ must ensure that the improvement is permanent before finding that a claimant is no longer disabled."). In this case, the ALJ discussed plaintiff's longitudinal medical records and reasonably found permanent symptom improvement as of August 23, 2023. (Tr. 20-21, 23). Like the plaintiff in *Niemasz*, plaintiff here has failed to present evidence that his symptom improvement was temporary, and "[u]nder these circumstances, substantial evidence supports the ALJ's decision to treat [plaintiff's] improvement as more than a temporary remission." *Niemasz*, 155 F. App'x at 839-40 (affirming medical improvement finding where the ALJ considered claimant's post-surgical conditions and testimony that he was "severely restricted in his daily activities," but explained that symptom improvement no longer rendered him disabled). Because the ALJ's decision is supported by substantial evidence, plaintiff's assignment of error must be overruled.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Statement of Specific Errors (Doc. 8) be **OVERRULED** and the Commissioner's non-disability finding be **AFFIRMED**;
2. Judgment be entered in favor of the Commissioner and this case be closed on the docket of the Court.

Date: 9/18/2026

Karen L. Litkovitz
United States Magistrate Judge